UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

WESTFIELD, LLC AND WEST COUNTY    )
CENTER LLC,                        )
                                   )
          Plaintiffs,              )
                                   )
     vs.                           )          Case No. 4:11CV00155 JCH
                                   )
IPC, INC., et al.,                 )
                                   )
          Defendants.              )

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Consulting Engineers Group, Inc.'s Motion to

Dismiss (ECF No. 21) and Defendant IPC, Inc.'s Motion to Dismiss (ECF No. 29).  These matters

are fully briefed and ready for disposition.

**BACKGROUND**

Plaintiff Westfield, LLC ("Westfield") was the property manager and contractor for the

shopping center construction for the mall and parking garage structures for West County Center mall

in Des Peres, Missouri (the "Project"). (Petition ("Pet."), ECF No. 6, ¶¶1, 11, 12).  Plaintiff West

County Center, LLC ("WCC") was the owner of the Project. (Pet., ¶2).  Part of the Project included

building multiple parking structures. (Pet., ¶13).  On June 24, 2000, Westfield entered into a design-

build Standard Construction Subcontract with Raider Precast Concrete, Inc. ("Raider")  to design

and build three precast parking structures for the Project (the "Subcontract"). (Pet., ¶¶14, 15).[1]

---

[1]Plaintiffs allege Westfield Corporation, Inc., a Delaware corporation, "converted to" Westfield, LLC on July 5, 2006. (Pet., ¶1).  IPC notes that Westfield Corporation, Inc. is not a party to this lawsuit even though Westfield Corporation, Inc. entered into the Subcontract with Raider Precast Concrete, Inc., and that Subcontract is the subject of Plaintiffs' breach of contract claim against IPC.  See Exhibit A to the Petition, ECF No. 6-1; Defendant IPC, Inc.'s Memorandum of Law in Support of its Motion to Dismiss, p. 1.

Raider entered into a sub-subcontract with Consulting Engineers Group, Inc. ("CEG"), an engineering and design firm, under which CEG was to provide design drawings for the parking structures Raider contracted to design, fabricate and erect pursuant to the Subcontract. (Pet., ¶17). CEG designed the parking structures and the parking structures were constructed from 2000-2002 based upon the design drawings prepared by CEG for Raider. (Pet., ¶20).

In November 2006, WCC noticed concrete cracking, movement and water intrusion in the parking structures. (Pet., ¶22). In May 2007, Plaintiffs learned that the parking structures had multiple defects resulting from the poor workmanship and design flaws of Raider and CEG. (Pet., ¶23). CEG designed a fix for the problems and throughout 2008 and 2009 extensive structural remediation was required to address the design failures in the parking structures. (Pet., ¶¶25-26). Plaintiffs allege that the design and construction of the parking structures failed to meet industry standards and they incurred significant costs to repair the defects, in addition to outside engineering consulting fees. (Pet., ¶¶ 27-35).

In December 2010, Plaintiffs filed this Petition in the Circuit Court of St. Louis County, State of Missouri. Plaintiffs alleged causes of action for Breach of Contract against IPC (Count I), Negligence against IPC (Count II), and Professional Negligence against CEG (Count III). On January 21, 2011, CEG removed the case to this Court based upon diversity jurisdiction, 28 U.S.C. §1332(a). (ECF No. 1). On March 7, 2011, CEG filed a motion to dismiss, and, on March 31, 2011, IPC filed a motion to dismiss.

## STANDARD FOR MOTION TO DISMISS

In ruling on a motion to dismiss, the Court must view the allegations in the complaint liberally in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto Servs., 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the Court "must

accept the allegations contained in the complaint as true and draw all reasonable inferences in favor

of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that

is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating the "no

set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45–46

(1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do." Twombly, 550 U.S. at 555; Huang v. Gateway Hotel Holdings, 520 F. Supp. 2d 1137, 1140

(E.D. Mo. 2007).

## DISCUSSION

**I.     Consulting Engineers Group, Inc.'s Motion to Dismiss**[2]

A.     Statute of Limitations

CEG claims that Plaintiffs' cause of action for negligence against CEG is barred by the five

(5) year statute of limitations for actions where damages are capable of ascertainment but the precise

amount of damage is not known. See Mo.Rev.Stat. §516.100.[3] CEG asserts that the parking

---

[2]CEG claims that Plaintiffs sued the wrong entity. Plaintiffs sued an Illinois corporation. (Pet., ¶7). The entity that performed work on the Project, however, is a Texas corporation. (Defendant's Memorandum in Support of Motion to Dismiss ("Memorandum"), ECF. No. 23, p. 2). CEG asks that this Court dismiss this action and allow Plaintiffs to refile it against the proper entity. In response, Plaintiffs asks the Court to allow it to add the proper CEG defendant and dismiss the improper CEG defendant. (Plaintiffs' Opposition to Defendant Consulting Engineers Group, Inc.'s Motion to Dismiss ("Response"), ECF No. 33, p. 1, n. 1). The Court grants Plaintiffs leave to file an amended complaint naming the proper defendant. Plaintiffs shall file an amended complaint within seven (7) days of the date of this order.

[3]Section 516.100 provides "Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment,

structures were completed in 2002, and the petition does not allege that the defects were hidden. (Memorandum, p. 3). Rather, CEG claims that Plaintiffs only allege "significant changes" four (4) years after CEG completed work on the Project. (Id.). Therefore, CEG claims that the fact of damages was capable of ascertainment before November 2006 and this lawsuit is barred by the statute of limitations. (Id.).

The Court finds that Plaintiffs' negligence claims is not barred by the statute of limitations. Plaintiffs allege that the defects were "latent" and only became "visible" in November 2006. (Pet., ¶¶21-22). Therefore, at this stage of litigation, the Court finds that Plaintiffs' Petition does not allege that the fact of damages was capable of ascertainment prior to the expiration of the statute of limitations period. State ex rel. Marianist Province of the United States v. Ross, 258 S.W.3d 809, 811 (Mo. 2008) ("The capable of ascertainment standard is an objective one; therefore, when relevant facts are uncontested, the statute of limitations issue can be decided by the court as a matter of law."). The Court denies CEG's motion to dismiss on this basis.

B.    Acceptance Doctrine

CEG next argues that Plaintiffs' claims are barred by the acceptance doctrine,"which relieves contractors of liability to those not parties to the contract after the owner accepts the contractor's work." Fisher v. State Highway Comm'n, 948 S.W.2d 607, 611 (Mo. 1997)(citing Gast v. Shell Oil Co., 819 S.W.2d 367, 370 (Mo. banc 1991)); Rogers v. Frank C. Mitchell Co., 908 S.W.2d 387, 388 (Mo. Ct. App. 1995);  Gruhalla v. George Moeller Construction Co., 391 S.W.2d 585, 597 (Mo. Ct. App. 1965). "In the absence of formal acceptance, constructive or practical acceptance will suffice." Roskowske v. Iron Mountain Forge Corp., 897 S.W.2d 67, 71 (Mo. Ct. App. 1995)(citing Gruhalla v. George Moeller Construction Co., 391 S.W.2d 585, 597 (Mo. App. 1965)). The burden is on the

and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained."

plaintiff to show there is no acceptance and contractor is still in control of the premises, particularly the area in which injury occurred. Id. (citing  Gruhalla, supra, at 598).[4]

Plaintiffs claim that exceptions to the acceptance doctrine are applicable.  Exceptions to this rule of non-liability of the contractor after acceptance by the owner include "a) departure from specifications that could not be discovered by reasonable investigation; b) the dangerous character of the structure or condition, unknown to the owner; c) hidden defects in the project which were not discoverable by the proprietor; and d) specifications that are 'so imperfect or improper that the … contractor should realize that the work done thereunder will make the structure or condition unsafe …'" Shady Valley Park & Pool v. Fred Weber, Inc., 913 S.W.2d 28, 34, n. 1 (Mo. Ct. App. 1995)(quoting Restatement (Second) of Torts, Sec. 384, comment f (1965)); see also Constance v. B.B.C. Dev. Co., 25 S.W.3d 571, 589 (Mo. Ct. App. 2000) ("(1) the defect is imminently dangerous to others; (2) the defect is so hidden that a reasonably careful inspection would not reveal it; and (3) the contractor knows of the defect, but the owner does not."); Chubb Group of Ins. Cos. v. C.F. Murphy & Associates, Inc., 656 S.W.2d 766, 776 (Mo. Ct. App. 1983)(exception to the acceptance doctrine where liability must be premised instead on whether the injury to plaintiffs was foreseeable).

---

[4]CEG claims that Westfield, the primary contractor, and WCC, the owner, cannot state a negligence claim against CEG because CEG's work was accepted by IPC.  CEG notes that its design and the construction of the parking structures were complete in 2002. (Memorandum, p. 4).  CEG claims that the owner's use of the parking structures for four (4) years after completion of the parking structures constitutes sufficient acceptance for application of the acceptance doctrine.  (Id.).

In response, Plaintiffs assert that the acceptance doctrine does not apply in this instance because Plaintiffs are the owner and general contractor, not third parties. (Response, pp. 6-7) (citing Constance v. B.B.C. Dev. Co., 25 S.W.3d 571, 589 (Mo. Ct. App. 2000)(the "acceptance doctrine ... relieves contractors of liability to third parties who are not a party to the contract").  In turn, CEG asserts that Plaintiffs are third parties to the contract, given that the contract was between CEG and IPC.  (Reply Memorandum in Support of Defendant Consulting Engineers Group, Inc.'s Motion to Dismiss ("Reply"), ECF No. 37, p. 3).   Because the Court determines that this case, as alleged, falls within an exception to the acceptance doctrine, however, the Court need not determine whether Westfield and WCC are third parties to the contract.

Plaintiffs assert that CEG's negligence claim fits within the exception to the acceptance doctrine because the injury to Plaintiffs was foreseeable. As noted by the court in Chubb Group of Ins. Cos., "architects and contractors owe a duty to exercise the care required of their professions to persons with whom they are not in privity when the injury to those third parties is foreseeable." 656 S.W.2d at 775. CEG claims that this holding is limited to those instances where the danger is hidden from discovery by the plaintiff and known to the defendant. Id. at 775, 777; Reply, p. 4. CEG claims that the alleged design defect "would have been apparent at the time the design was delivered in 2002." (Reply, p. 5). But, as previously discussed, Plaintiffs allege that the design defect was latent and not discovered until November 2006. Accordingly, the Court finds that Plaintiffs' allegations fall within an exception to the acceptance doctrine because Plaintiffs allege that the defects to the parking structures were or should have been foreseeable by CEG as a likely result of negligent performance of their duty to design. The Court denies CEG's motion to dismiss on this basis.

C. Economic Loss Doctrine

CEG argues that Plaintiffs' negligence claim is barred by the economic loss doctrine.[5] "The economic loss doctrine bars 'recovery of purely pecuniary losses in tort where the injury results from a breach of a contractual duty.'" Dubinsky v. Mermart, LLC, 595 F.3d 812, 819 (8th Cir. 2010)(quoting Zoltek Corp. v. Structural Polymer Group, Ltd., 2008 U.S. Dist. LEXIS 92714, at *3 (E.D. Mo. 2008), aff'd on other grounds, No. 08-3928, 592 F.3d 893, 2010 U.S. App. LEXIS 1632 (8th Cir. Jan. 26, 2010).

Plaintiffs assert that the economic loss doctrine is not applicable to a claim of professional negligence. (Response, pp. 9-10). The economic loss doctrine, however, does not apply and preclude tort liability in an action based on the negligent rendition of services by a professional. City

[5]Notably, CEG does not address this argument in its Reply.

of Kennett v. Wartsila N. Am., Inc., No. 4:05CV114, 2005 U.S. Dist. LEXIS 34986, at *5 (E.D. Mo. Dec. 2, 2005)(citing Rockport Pharmacy, Inc., v. Digital Simplistics, Inc., 53 F.3d 195, 199 (8th Cir. 1995)); Business Men's Assurance Co. of Am. v. Graham, 891 S.W.2d 438, 454 (Mo. Ct. App. 1994); Bryant v. Murray-Jones-Murray, Inc., 653 F.Supp. 1015 (E.D. Mo. 1985)).  Plaintiffs allege that CEG violated a professional standard of care.  (Pet., ¶63; see Rockport Pharmacy, 53 F.3d at 199).  Accordingly, Plaintiffs' allegations against CEG for professional negligence are not barred by the economic loss doctrine.  CEG's motion to dismiss is denied.

## II.      IPC, Inc.'s Motion to Dismiss

### A.      Successor Liability

IPC argues that it is not liable under a theory of successor liability for the alleged negligence of Raider.  (Defendant IPC, Inc.'s Memorandum of Law in Support of its Motion to Dismiss ("Memorandum"), ECF No. 30, p. 3).  Raider performed work on the Project as a subcontractor pursuant to the Subcontract.  (Pet., ¶3).  Plaintiffs allege that during the construction of the Project, the assets of Raider, including the Subcontract between Westfield and Raider, were purchased by Cretex Precast Concrete, Inc ("Cretex").  (Pet., ¶4).  Cretex changed its name to Raider Precast Concrete Inc. ("Raider II") in October 2001 and continued to perform work under the subcontract with Westfield.  (Id.).  Raider II performed work on the Project that included designed and construction work related to the production and installation  of the precast concrete for the parking garage structures.  (Pet., ¶5).  Raider II completed the construction of the parking garage structures in 2002.  (Id.).  Raider II merged with IPC in 2004.  (Pet., ¶6).  Plaintiffs allege that IPC is the "successor entity" following the merger and, therefore, IPC is responsible for the claims asserted against Raider.  (Id.).

The traditional common law rule of corporate successor liability "provides that where one corporation purchases the assets of another, the purchasing or successor corporation takes free of the liabilities of the first corporation unless one of four limited exceptions applies: (1) the successor expressly or impliedly agrees to assume the liabilities; (2) a de facto merger or consolidation occurs; (3) the successor is a mere continuation of the predecessor; or (4) the transfer to the successor corporation is a fraudulent attempt to escape liability." K.C. 1986 L.P. v. Reade Mfg., 472 F.3d 1009, 1021 (8th Cir. 2007)(citing United States v. Mex. Feed and Seed Co., 980 F.2d 478, 487 (8th Cir. 1992)).

Plaintiffs assert that they have "alleged a course of transactions that establishes that IPC is liable as a successor for breach of the contract between Plaintiffs and Raider I.  Raider II expressly or impliedly assumed Raider I's obligations under the construction contract, and then Raider II subsequently merged with IPC." (Response, pp. 2-3).  Plaintiffs allege Raider II expressly assumed Raider I's obligations when Raider II purchased the assets of Raider I and assumed its contracts, including the subcontract at issue.  (Pet., ¶¶4-5; Plaintiffs' Opposition to Defendant IPC, Inc.'s Motion to Dismiss ("Response"), ECF No. 38, p. 4).  Similarly, Plaintiffs claim that they allege an implied assumption of Raider I's obligations by Raider II.  (Response, p. 5).  That is, Plaintiffs allege that Raider II continued work on the subcontract and continued to receive payments under the subcontract.  (Pet., ¶4).

IPC argues that "[w]hile it [sic] has alleged that Cretex gained the assets of Raider I, pursuant to the general rule against successor liability, this allegation alone fails to state a claim of successor liability." (Memorandum, p. 6).  IPC posits that Plaintiffs have failed to plead an exception to the general rule against successor liability.  (Id., pp. 6-7).  IPC notes that nowhere in the Petition do the Plaintiffs allege that the "debts and liabilities" of Raider I were expressly or impliedly assumed by

Raider II.  (Defendant IPC, Inc.'s Reply in Support of its Motion to Dismiss ("Reply"), ECF No. 43, pp. 2-3).

The Court finds that Plaintiffs does not allege a claim for successor liability based upon Raider II's express or assumed assumption of Raider I.  Plaintiffs state only that Raider II purchased the Subcontract and continued to perform work under the Subcontract.  (Pet., ¶¶4-5).  Plaintiffs never allege that Raider II assumed the debts and liabilities of Raider I.  The Court cannot accept that Raider II assumed the debts and liabilities of Raider I simply because it continued work on one subcontract.  Plaintiffs' claims against IPC are dismissed, without prejudice, and Plaintiffs are granted seven (7) days from the date of this order to file an amended complaint.

B.      Economic Loss Doctrine

As discussed in Section I, Missouri law prohibits a cause of action in tort where the plaintiff suffered only economic losses.  Rockport Pharmacy, Inc., 53 F.3d at 198.  IPC asserts that Plaintiffs' negligence claim is barred by the economic loss doctrine and that it is not subject to any exception to the economic loss doctrine, including the exception for professional negligence.  IPC notes that a professional standard of care does not apply to a contractor, such as IPC.  (Memorandum, p. 8) (citing Korte Const. Co. v. Deaconess Manor Ass'n, 927 S.W. 2d 395 (Mo. Ct. App.  1996)).  IPC claims that, unlike Plaintiffs' allegations against CEG, Plaintiffs allege a claim for common negligence, not professional negligence against IPC. (Reply, p. 8).  IPC posits that Plaintiffs' negligence claim is barred on this basis.

Plaintiffs, however, assert that the negligence claim against IPC is saved because it falls within the professional negligence exception to the economic loss doctrine.  Plaintiffs allege that Raider I entered into a design-build contract and agreed to perform professional design services under the contract.  (Pet., ¶¶14-15).  Plaintiffs argue that IPC cannot be relieved of its obligation to meet

professional design standards merely because it subcontracted out the design work to CEG. (Response, p. 8) ("Simply because Raider I decided to subcontract out the design work does not relieve it of the obligations it undertook to perform these professional services."). In addition, Plaintiffs assert that IPC should be held to a higher standard because of its specialization in the construction of parking garages. (Response, p. 9).

The Court finds that Plaintiffs' negligence claim against IPC is barred by the economic loss doctrine. Plaintiffs admit that IPC subcontracted out the design of the parking structures to CEG and IPC was responsible only for the construction of the parking structures. In addition, Plaintiffs already sued CEG in negligence for its design of the parking structures. Plaintiffs cannot obtain double recovery in negligence against both CEG and IPC for the same design. Moreover, the fact that Raider I entered into a design-build contract and "agreed to provide professional design services under the contract" (Response, p. 8) only bolsters Plaintiffs' breach of contract claim against IPC. Raider/IPC's alleged failure to perform design services properly under the contract does not support a negligence action. Plaintiffs' negligence claim against IPC is dismissed.

<u>**CONCLUSION**</u>

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Consulting Engineers Group, Inc.'s Motion to Dismiss (ECF No. 21) is **DENIED**.

**IT IS FURTHER ORDERED**  Defendant IPC, Inc.'s Motion to Dismiss (ECF No. 29) is **GRANTED**.  Plaintiffs have seven (7) days to file an amended complaint in accordance with this order.

Dated this   8th   day of September, 2011.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE